### UNITED STATES v. MORGAN et al.

#### (Circuit Court, S. D. New York. July 15, 1910.)

1. Food (§ 7*)—Food and Drugs Act—"Misbranding"—"Spring Water."
   Ordinary Croton water drawn from the pipes in New York City filtered and bottled after the addition of small quantities of mineral salts and carbonic acid gas, is not "spring water," as the term is generally understood, and the labeling of the bottles as spring water constitutes a misbranding within the meaning of the food and drugs act (Act June 30, 1906, c. 3915, § 8, 34 Stat. 771 [U. S. Comp. St. Supp. 1909, p. 1191]).

   [Ed. Note.—For other cases, see Food, Dec. Dig. § 7.*

   For other definitions, see Words and Phrases, vol. 7, p. 6617.]

2. Criminal Law (§ 37*)—Violation of Food, and Drugs Act—Entrapment.
   The fact alone that the only interstate shipment shown of a misbranded food article by the manufacturer was secretly induced by an agent of the Department of Agriculture is not a defense to a prosecution therefor under the food and drugs act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]), the reasons for the action of such agent not appearing.

   [Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 37.*]

3. Food (§ 20*)—Food and Drugs Act—Prosecution for Violation—Conditions Precedent.
   Although an indictment under the food and drugs act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]) for adulteration or misbranding is not demurrable because it contains no allegation of notice from the Department of Agriculture to the defendant of the result of the examination of the article, and that he was, given an opportunity to be heard, as required by section 4 of the act, since such prosecutions may be maintained by the district attorney under section 5 without the intervention of the department, such allegations and proof are necessary in all cases where the prosecution is instigated by officers or agents of the department; and, if it appears on the trial that the case is such, there can be no conviction in the absence of such allegation and proof.

   [Ed. Note.—For other cases, see Food, Dec. Dig. § 20.*]

Criminal prosecution by the United States against John Morgan and others. On motions for new trial and in arrest of judgment. Motion in arrest granted.

Henry A. Wise and Robert Stephenson, for the United States.
Alexander Thain and Otto G. Foelker, for defendants.

HOLT, District Judge. These are motions by the defendants for a new trial and in arrest of judgment. The defendants were convicted under the act of June 30, 1906, commonly called the "Pure Food Act," for shipping from New York to New Jersey misbranded bottled wa-

ter. The bottles were labeled "Imperial Spring Water." They contained water which was originally ordinary Croton water, drawn from a pipe on the defendants' premises in New York City. This water was first passed through a fine sand filter, then through beds of gravel and charcoal. Then a small quantity of mineral salts was added. It was charged with carbonic acid gas, and put in thoroughly clean bottles. This water when sold was pure and wholesome. A food and drug inspector, appointed by and acting under the Department of Agriculture, whose office was in New York City, went to a druggist at Newark, N. J., and asked for Imperial Spring water. The druggist had none. The inspector thereupon asked the druggist to order some for him. He did so. In compliance with such order the defendants shipped half a dozen bottles so labeled from New York City to the druggist at Newark, N. J. He thereupon sold them to the inspector, who brought them back to New York, and reported the case to the district attorney. The defendants were thereupon indicted for such shipment. There was no evidence on the trial that any notice was given to the defendants of the examination of said water by or under the direction of the bureau of chemistry in the Department of Agriculture, or that any opportunity was given to them to be heard on the question whether the pure food act had been violated.

The defendants claim, on these motions, first, that the evidence showed that the water sold was spring water, and therefore that the bottles were not misbranded. The proof showed that ordinary Croton water, like the water of any fresh water lake or river, is partly spring, and partly rain and surface water. The water as treated by the defendants was a thoroughly filtered water, with a little mineral salts and carbonic acid gas added, which made it more sparkling, and, to many people, more attractive. It was perhaps as expensive to produce and as pure and wholesome as spring water. But it was not what is commonly understood by the public as spring water; that is, water taken directly from a natural spring. The label therefore was misleading and the bottles misbranded. The object of the pure food act is not only to protect the public from unwholesome food and drink, but to require that any article of food, drink, or medicine sold shall be correctly described by its label.

The defendants also claim that no judgment should be entered in this case because there is no evidence that they ever made any other shipment of such water in interstate commerce, and the evidence shows that the shipment on which the indictment was based was secretly induced by a government detective in order to create a basis for a criminal charge. There is no evidence that the defendants ever before sold or shipped water outside of New York City. The inspector who ordered the water at Newark had his office in New York. His only apparent object in going to Newark to order this water was to secretly lure the defendants into an act which would enable him to make a criminal charge against them. This was a perfectly wholesome water, and, if there was no other justification for the inspector's proceeding than appears in the evidence, I think his course of action was one of unnecessary zeal. If there were no bottles to be found in other states which had been voluntarily shipped there by the defendants, whatever

public evil might result from the sale of such water in New York City might wisely, in my opinion, have been left to be dealt with by the state authorities. The pure food act is a beneficial act; and it will be a matter of regret if the inspectors of the Department of Agriculture arouse hostility to it by excessive zeal to institute trivial prosecutions. But there may have been valid reasons for the course which was taken which did not appear on the trial; and, in any event, I am not willing to hold that because some criticism may perhaps be made on the manner in which the proof was obtained the proof itself was invalid or insufficient.

The important question on these motions is whether it was necessary for the indictment to allege and for the government to prove that notice was given to the defendants by the agents of the Department of Agriculture of the examination of the samples obtained of the water, and an opportunity given them to be heard on the question whether the law had been violated.

Sections 3, 4, and 5 of the pure food act are as follows:

"Sec. 3. That the Secretary of the Treasury, Secretary of Agriculture, and the Secretary of Commerce and Labor shall make uniform rules and regulations for carrying out the provisions of this act, including the collection and examination of specimens of foods and drugs manufactured or offered for sale in the District of Columbia, or in any territory of the United States, or which shall be offered for sale in unbroken packages in any state other than that in which they shall have been respectively manufactured or produced, or which shall be received from any foreign country, or intended for shipment to any foreign country, or which may be submitted for examination by the chief health, food, or drug officer of any state, territory, or the District of Columbia, or at any domestic or foreign port through which such product is offered for interstate commerce, or for export or import between the United States and any foreign port or country.

"Sec. 4. That the examinations of specimens of foods and drugs shall be made in the bureau of chemistry of the Department of Agriculture, or under the direction and supervision of such bureau, for the purpose of determining from such examinations whether such articles are adulterated or misbranded within the meaning of this act; and if it shall appear from any such examination that any of such specimens is adulterated or misbranded within the meaning of this act, the Secretary of Agriculture shall cause notice thereof to be given to the party from whom such sample was obtained. Any party so notified shall be given an opportunity to be heard under such rules and regulations as may be prescribed as aforesaid, and if it appears that any of the provisions of this act have been violated by such party, then the Secretary of Agriculture shall at once certify the facts to the proper United States district attorney, with a copy of the results of the analysis or the examination of such article duly authenticated by the analyst or officer making such examination, under the oath of such officer. After judgment of the court, notice shall be given by publication in such manner as may be prescribed by the rules and regulations aforesaid.

"Sec. 5. That it shall be the duty of each district attorney to whom the Secretary of Agriculture shall report any violation of this act, or to whom any health or food or drug officer or agent of any state, territory, or the District of Columbia shall present satisfactory evidence of any such violation, to cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States, without delay, for the enforcement of the penalties as in such case herein provided."

The claim that the indictment was invalid on its face because it did not allege that notice of the examination and opportunity to be heard was given to the defendants is, I think, untenable. There is obviously

at least one case in which a prosecution is authorized when no preliminary investigation has been had by officers of the Department of Agriculture. The fifth section provides that it shall be the duty of the district attorney to prosecute whenever any state health officer presents satisfactory evidence of any violation of the act. Moreover, the first and second sections, making it a misdemeanor to manufacture in the territories or District of Columbia, or to ship in interstate commerce, adulterated or misbranded foods or drugs, are general in their terms. The act prohibited constitutes the misdemeanor. There is no direct reference in them to the subsequent sections providing for the notice to the owner of the samples and the opportunity to be heard; and in my opinion the district attorney can institute prosecutions under those sections upon adequate evidence without any preliminary investigation or action by the officers of the Department of Agriculture. But under the provisions of section 4 of the act, whenever an investigation is first instituted by the food and drug inspectors or other agents of the Department of Agriculture or of its bureau of chemistry, and an examination of specimens of foods or drugs had for the purpose of determining whether they have been adulterated or misbranded, notice of the examination and an opportunity to be heard must have been given to the party from whom the sample was obtained. In my opinion a compliance with this section is a prerequisite to a prosecution in all cases in which the matter is brought before the district attorney for prosecution by the agents of the Department of Agriculture. Proof of such notice and opportunity to be heard before the indictment is therefore material in all such prosecutions; and, of course, all material facts which are necessary to sustain a conviction must be alleged in the indictment. The result is that although an indictment under the pure food act is not demurrable because it contains no allegation of such notice and opportunity to be heard, since such prosecutions can be maintained by the district attorney without the intervention of the officers of the Department of Agriculture, such allegations and proof are necessary in all cases where the prosecution is instigated by such officers; and, if it appears by evidence on the trial that the case is such, no conviction can be had in the absence of such allegation and proof. In this case the investigation and prosecution were due to such officers. I think, therefore, that the indictment should have alleged and the evidence for the government established that such notice and opportunity to be heard were given to the defendants, and that, in the absence of such allegation and proof, the motion in arrest of judgment should be granted. The motion for a new trial should be either withdrawn or denied. If granted, a new trial would result in nothing, because, in my opinion, the indictment is fatally defective.